IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

THE HARTLEY COMPANY, et al.,
    Plaintiffs,

v.

JF ACQUISITION, LLC, d/b/a
JONES & FRANK,
    Defendant.

Case No. 3:15-cv-94

JUDGE WALTER H. RICE

DECISION AND ENTRY FINDING THAT THE OHIO PETROLEUM
UNDERGROUND STORAGE TANK RELEASE COMPENSATION
BOARD IS A NECESSARY PARTY UNDER FEDERAL RULE OF CIVIL
PROCEDURE 19, BUT THAT THE ELEVENTH AMENDMENT TO THE
UNITED STATES CONSTITUTION PROHIBITS JOINDER OF THE
BOARD BY THIS COURT; FINDING THE BOARD IS AN
INDISPENSABLE PARTY, AS THIS CASE MAY NOT, IN EQUITY AND
GOOD CONSCIENCE, PROCEED ABSENT THE BOARD'S
PARTICIPATION; CAPTIONED CAUSE SHALL REMAIN ACTIVE ON
THE COURT'S DOCKET FOR THIRTY (30) DAYS FROM THE DATE OF
THIS ENTRY TO ALLOW PARTIES TO FILE MOTIONS FOR
RECONSIDERATION; IF NO SUCH MOTION IS FILED, COURT WILL
ISSUE ORDER REMANDING THE CAPTIONED CAUSE TO THE MIAMI
COUNTY, OHIO, COURT OF COMMON PLEAS

## I. INTRODUCTION AND PROCEDURAL HISTORY

On January 11, 2017, this Court concluded that the Ohio Petroleum Underground Storage Tank Release Compensation Board ("PUSTRCB" or "The Board") was a necessary party to the instant litigation and ordered The Board joined as an involuntary plaintiff. Doc. #56. On January 20, 2017, The Board filed its Response to [The] Order Dated January 11, 2017 ("Response"), in which it requested that the Court withdraw its

joinder order and implement "a process to consider the [joinder] issue carefully." Doc. #86, PAGEID #3168 (emphasis removed). On January 27, 2017, the Court ordered The Board, Plaintiff The Hartley Company ("Hartley"), and Defendant JF Acquisition, LLC, d/b/a Jones & Frank ("Defendant" or "JF") to submit simultaneous briefing on the issues set forth herein, to aid the Court in its determinations of whether:

1. The Eleventh Amendment to the United States Constitution bars The Board from being joined as an Involuntary Plaintiff;

2. The Board's joinder deprives the Court of subject matter jurisdiction under 28 U.S.C. §1332;

3. The Board is a necessary party under Rule 19(a);

4. If The Board is a necessary party, joinder is feasible; and

5. If joinder is not feasible, the Board is an indispensable party under Rule 19(b), without which the case may not proceed. Doc. #87, PAGEID #3250-51.

On February 10, 2017, the Court vacated its joinder order, subject to reinstatement if, after the parties briefed the above issues, the Court determined that The Board was a necessary party and could be joined. Doc. #88.

Having fully considered the parties' responses to the questions posed by the Court, the new issues that the parties raised in their briefing, and the Court's own research, the Court reaches the following conclusions, with reasoning set forth more fully below:

1. The Board is a necessary party under Rule 19(a);

2. Joinder of The Board by this Court, even as an involuntary plaintiff, is not proper, because the Eleventh Amendment to the United States Constitution prohibits

the Court from exercising any authority over The Board, an arm of the State of Ohio, absent The Board's consent;

3. The Board is an indispensable party under Rule 19(b), as the instant lawsuit cannot, in equity or good conscience, proceed without The Board joined as a party; and

4. The captioned cause should be remanded to the Miami County, Ohio, Court of Common Pleas.

## II. ANALYSIS

### A. The Board is a Necessary Party

"[R]esolution of the question of joinder under Rule 19 . . . involves a three-step process." *Keweenaw Bay Indian Cmty. v. State of Michigan*, 11 F.3d 1341, 1345 (6th Cir. 1993) (citations omitted). First, the Court must "determine whether a person is necessary to the action and should be joined if possible." *Id*. At this initial step, the Court must determine whether:

(A) [I]n that person's absence, the Court cannot accord complete relief among existing parties; or

(B) [T]hat person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

Hartley, as the owner of underground petroleum storage tanks ("UST"), pays a yearly fee to the Ohio Petroleum Underground Storage Tank Financial Assurance Fund ("The Fund"). Doc. #90, PAGEID #3267. The Board is responsible for administering

3

The Fund, which provides reimbursement to UST owners for corrective actions to their properties that are ordered by the Ohio Bureau of Underground Storage Tank Regulations. *Id.*, PAGEID #3268. As of January 20, 2017, Hartley had submitted reimbursement claims in the amount of $247,626.07, and "The Board anticipates that additional applications will be filed." Doc. #86, PAGEID #3179. The Board, as of that date, had issued reimbursements to Hartley in the amount of $76,687.58. *Id*. Through these reimbursements, The Board "is entitled by subrogation to all rights of the responsible person to recover those costs from <u>any other person</u>." Ohio Admin. Code § 3737-1-09(B) (emphasis added); *see also id*. at § 3737-1-22(A)(5) ("any settlement, compromise, judgment, award, or other recovery in favor of the responsible person shall not preclude [T]he [B]oard from enforcing its subrogation rights against the other party(s)").

In other words, once The Board made reimbursements to Hartley, The Board's subrogation rights vested, and it could pursue recovery, from JF or any other responsible party, for the reimbursements it had made. Further, The Board has a right of indemnification; if a jury were to find JF liable for the UST leak and award Hartley damages, then Hartley would be obligated to remit the proceeds of any recovery to The Board. Doc. #86, PAGEID #3178-79 (citing Ohio Admin. Code § 3737-1-22(D)). The Board has neither exercised nor released its subrogation and indemnification rights.

Hartley claims that The Board's indemnification and subrogation rights are immaterial to "[t]he pertinent matter before the Court"—that is, whether JF "breached its contract and negligently failed to properly tighten the SwiftCheck Valve, causing an extensive release of gasoline and resulting damages." Doc. #89, PAGEID #3258. A

jury, Hartley claims, can make those liability and damages determinations without implicating The Board. *Id.* Hartley argues that The Board's subrogation and indemnification rights are not triggered until a finding on liability is made, and notes that it must remit any recovery it obtains to The Board. *Id.*, PAGEID #3260. Therefore, Hartley argues, The Board is not a necessary party, as The Board does not need to be joined to protect its interest. *Id.*, PAGEID #3259-60. Further, Hartley claims, JF is at no risk of incurring multiple, inconsistent obligations, as The Board would have no reason to pursue recovery against JF, given Hartley's obligation to remit any recovery it receives from JF to The Board, Doc. #89, PAGEID #3260,

In response, JF notes that, as discussed above, "The Board's statutorily created powers provide a right of subrogation reportedly permitting The Board to pursue a third party, such as Defendant, for reimbursement of corrective action costs." Doc. #95, PAGEID #3325. Further, The Board has conceded that a judgment against JF, and JF's satisfaction of same, would not operate to extinguish The Board's subrogation right, Doc. #86, PAGEID #3178, and The Board has not agreed to release its right of subrogation even if JF were to satisfy any judgment that might be rendered against it. While The Board has indicated it could release its subrogation and indemnification rights if an acceptable settlement is reached, Doc. #86, PAGEID #3179, The Board has not done so to date, as remediation efforts on Hartley's property are ongoing, and the amount of actual damages is uncertain. Thus, JF argues, if The Board is not joined, JF will be at substantial risk of incurring multiple, inconsistent obligations to Hartley and The Board.

5

In evaluating the parties' briefing, and its own research on the subject, the Court concludes that The Board's exclusion from this litigation would create an acute risk that JF will incur obligations to both Hartley and The Board for the same liability. For example, because the amount of damages is uncertain, The Board may ultimately issue a greater amount in reimbursements to Hartley than the amount of a judgment assessed against JF, even if a jury found JF to be one hundred percent liable for the damages to Hartley's property. In such a scenario, The Board would still be able to exercise its right of subrogation against JF, even if JF had discharged its liability to Hartley by paying the full judgment amount.[1] Also, despite Hartley's legal obligation to remit to The Board any funds that it receives in a judgment, Doc. #89, PAGEID #3260, if Hartley fails to do so, The Board is not obligated to exercise its right of indemnification against Hartley prior to exercising its right of subrogation against JF. Neither Hartley nor The Board claims, much less cites to statutory authority, that JF paying the full judgment to <u>Hartley</u> somehow estops <u>The Board</u> from exercising its subrogation rights, in the event that Hartley does not remit the judgment proceeds to The Board. Thus, absent The Board's joinder, JF may be liable to both Hartley and The Board, in an amount greater than its total liability as determined by the trier of fact. This acute risk of multiple, inconsistent obligations leads the Court to conclude that The Board is a necessary party. Fed. R. Civ. P. 19(a)(1)(B)(ii).

---

[1] To make the above hypothetical more concrete: this case could go to trial in 2017, prior to remediation efforts being complete, and a trier of fact could find JF to be one hundred percent liable for the damage to Hartley's property, and award Hartley $400,000 in damages. JF could discharge its liability to Hartley by paying the full amount of the judgment, and Hartley could fulfill its statutory obligation by remitting $400,000 to The Board. However, it could be the case that remediation is more costly than originally anticipated, and The Board issues reimbursements to Hartley in the amount of, for example, $600,000. The Board would be able to pursue recovery against JF for the remaining $200,000, despite JF having already paid what was determined by the trier of fact to be its full liability.

6

## B. Joinder of The Board by this Court is not Possible

Having determined that The Board is a necessary party, the Court must, at step two, determine whether it is possible for this Court to join The Board in the instant case. *Keweenaw*, 13 F.3d at 1345-46 (citations omitted). For the reasons set forth below, the Court concludes that The Board is an arm of the State of Ohio ("State"), and involuntary joinder of The Board, even as a plaintiff, is prohibited by the Eleventh Amendment.

### 1. The Board is a State Agency

In its opening brief, JF argues that The Board is not an arm of the State, and the issue of whether the Eleventh Amendment bars The Board's joinder is moot. Doc. #91, PAGEID #3283. The Sixth Circuit requires Courts to consider four factors in determining whether a public agency is an arm of a state: (1) the potential impact of litigation on the State treasury; (2) the language by which statutes and state courts refer to the entity; (3) whether the entity's board members are appointed by state officials; and (4) whether th entity's functions are within traditional purview of state or local government. *Lowe v. Hamilton Cnty. Dep't of Job & Family Servs.*, 610 F.3d 321, 325 (6th Cir. 2010); *Ernst v. Rising,* 427 F.3d 351, 359-60 (6th Cir. 2005). JF concedes that the second and third factors weigh in favor of finding that The Board is a state agency. Doc. #91, PAGEID #3281-82. However, JF claims that no judgment could subject The Board to liability, and that The Board operates in a manner similar to a private insurance company, and thus, does not carry out a function within the traditional purview of government. Therefore, JF argues, the first and fourth factors, respectively, weigh against finding that The Board is an arm of the State. *Id.*, PAGEID #3281-82, 3282-83. JF argues that, because potential liability is generally the most important factor, *Ernst*,

7

427 F.3d at 364, the Court should find that The Board is not a State agency, and that the Eleventh Amendment is not implicated in the Court's joinder analysis. Doc. #91, PAGEID #3283.

JF's argument is not persuasive. As Hartley points out, the fact that The Board faces no risk of an adverse judgment being entered against it: (a) is not dispositive as to whether it is an arm of the State; and (b) provides no insight as to whether the State treasury would be affected by a judgment. Doc. #93, PAGEID #3298; see also Ernst, 427 F.3d at 364 (internal quotation marks and citation omitted) ("[w]hile there can be little doubt that the state-treasury inquiry will generally be the most important one, it also seems clear that it is not the sole criterion for determining whether an agency is a state entity for sovereign immunity purposes."). As The Board states in its response, "[T]he Board's personnel costs are paid from an appropriation in the state budget." Doc. #94, PAGEID #3308. Further, The Board is being represented in this litigation by the Office of the Ohio Attorney General, and the parties' briefing does not suggest that The Board's counsel is being paid through The Fund. Thus, the State of Ohio treasury does appear to be implicated by The Board's inclusion. Moreover, while The Board's operations and any reimbursements it issues to UST owners are financed by The Fund, one of its missions is "to preserve and protect the water resources of the state and to prevent, abate, or control the pollution of water resources, particularly ground water, for the protection and preservation of the public health, safety, convenience, and welfare[.]" Ohio Rev. Code § 3737.94(A). The Board's mission, as set forth by the Ohio General Assembly, is undoubtedly within the traditional purview of state government. Thus, all four factors support the conclusion that The Board is an arm of the State.

## 2. Eleventh Amendment Bars Joinder

The Eleventh Amendment to the U.S. Constitution states that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. Const. amend. XI. "The Amendment is rooted in a recognition that the States, although a union, maintain certain attributes of sovereignty, including sovereign immunity." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993) (citation omitted). Accordingly, "the States . . . retain their immunity against all suits in federal court," *id.*, and it is well-settled that, absent a state's express consent, a state may not be joined as a <u>defendant</u> in federal court.

The question of whether the Eleventh Amendment bars a District Court from joining a state as an <u>involuntary plaintiff</u>, one for whom there is no risk of an adverse judgment being entered against them, appears to be a novel one within the Sixth Circuit. Nonetheless, an examination of other caselaw leads this Court to conclude that the Eleventh Amendment operates as such a bar. JF cites several cases in which courts held that the Eleventh Amendment does not apply in cases, such as this, where the state is a plaintiff. Doc. #91, PAGEID #3283-85 (citing (*Oklahoma ex rel. Edmondson v. Magnolia Marine Transp. Co.* 359 F.3d 1237, 1239 (10th Cir. 2004); *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1564 (Fed. Cir. 1997); *New Hampshire v. Amerada Hess. Corp. (In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 361 F. Supp. 2d 137, 145-47 (S.D.N.Y. 2004), *vacated and remanded on other grounds by In re MTBE Prods. Liab. Litig.*, 488 F.3d 112 (2d Cir. 2007)). However, in each of those cases, the state had initiated lawsuits, and the

9

defendants either removed the cases to federal court or transferred venue. Those courts, in turn, held that, because the states had initiated litigation, they could not use the Eleventh Amendment to bar defendants' proper exercise of their right to remove or to petition to transfer. None of those cases, however, suggests that a state can be compelled to litigate, in a District Court, a lawsuit which it neither initiated nor agreed to participate in.

In contrast, the Eighth Circuit has squarely addressed the question of whether a state can be joined as an involuntary plaintiff, and held that doing so was prohibited by the Eleventh Amendment. *Thomas v. FAG Bearings Corp.*, 50 F.3d 502, 506-07 (8th Cir. 1995). The state's status as plaintiff or defendant was immaterial, the *Thomas* Court held; rather, "concern and respect for state sovereignty are implicated whenever a state is involuntarily subjected to an action, regardless of the role it is forced to play in the litigation." *Id*. at 506. The holding in *Thomas* is consistent with the Supreme Court's ruling in *Metcalf & Eddy*, which sets forth the purpose of the Eleventh Amendment: that principles of federalism and states' sovereign immunity bar a District Court from compelling a state to act or participate in a suit in that court. *Metcalf & Eddy*, 509 U.S. at 146. To join The Board involuntarily, even as a plaintiff, would violate that purpose. The Court concludes that the Eleventh Amendment renders joinder of The Board by this Court unconstitutional and, thus, impossible.[2]

---

[2] As the Eleventh Amendment renders joinder of The Board impossible, the Court need not and will not consider the issue of whether joinder of The Board, even if Constitutionally permissible, would deprive the Court of subject matter (diversity) jurisdiction under 28 U.S.C. § 1332.

### C. The Board is an Indispensable Party

As The Board may not be joined, the Court, at step three, must determine whether The Board is an indispensable party. *Keweenaw*, 13 F.3d at 1345. "[A] determination that a party is 'indispensable,' thereby requiring dismissal of an action, represents a legal conclusion reached after balancing the prescribed factors under Rule 19." *Local 670, United Rubber Cork, Linoleum & Plastic Workers of Am., AFL-CIO v. Int'l Union, United Rubber Cork, Linoleum & Plastic Workers of Am., AFL-CIO*, 822 F.2d 613, 619 (6th Cir. 1987). Factors that the Court is to consider include:

(1) [T]he extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2) [T]he extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures;

(3) [W]hether a judgment rendered in the person's absence would be adequate; and

(4) [W]hether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). As discussed above, a judgment rendered without The Board as a party would not extinguish The Board's subrogation or indemnification rights, and could subject JF to multiple, inconsistent obligations. The Board's absence prejudices JF and renders the Court unable to accord complete relief among the existing parties. Thus, any judgment that might be issued in The Board's absence would be inadequate. Further, any protective provision in a judgment or relief would require The Board's involvement, which is prohibited by the Eleventh Amendment. Thus, the first three factors weigh in favor of finding that The Board is an indispensable party.

11

As to the fourth factor, the Court acknowledges the prejudice that JF would suffer if the case, which JF properly removed, were litigated in state court. *See* Doc. #95, PAGEID #3324 (quoting *Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 111, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945) ("[d]iversity jurisdiction is founded on assurance to non-resident litigants of courts free from susceptibility to potential local bias.")). Nonetheless, dismissal with prejudice would cause Hartley to suffer much greater harm. Thus, remand provides Hartley with an adequate remedy, as it allows the parties to litigate the merits of Hartley's claim in a forum where all parties that the Court deems necessary may be joined. Thus, the fourth factor also weighs in favor of finding that The Board is indispensable to this litigation.

In sum, The Board is an indispensable party, and the case cannot, in equity or good conscience, continue in this Court. However, because the litigation may proceed in state court, the captioned cause shall be remanded to the Miami County, Ohio, Court of Common Pleas.

### III. CONCLUSION

For the foregoing reasons, the Court concludes that The Board is a necessary and indispensable party, and that joinder of The Board is prohibited by the Eleventh Amendment. Thus, the Court may not hear the case, and must remand the captioned cause to the Miami County, Ohio, Court of Common Pleas. However, as discussed with the parties on March 13, 2017, the captioned cause shall remain active on this Court's docket for thirty days from the date of this Entry to allow any or all parties to file motions for reconsideration. If no such motion is filed, then the Court will issue an order of

remand, and a termination entry.[3]  If such a motion is filed, then briefing shall proceed pursuant to S.D. Ohio Civ. R. 7.2, and the Court will delay entering any order of remand until ruling on the motion.

Date: May 1, 2017

WALTER H. RICE
UNITED STATES DISTRICT JUDGE

---

[3] In the order of remand, the Court will also overrule all of Hartley and JF's motions *in limine*, Doc. #22-27, and JF's Motion for an Extension of Time to Complete Limited Additional Discovery, Doc. #57, without prejudice as moot.